UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                    CRIMINAL NO. 08-26 (PJS/JSM)

     Plaintiff,

v.                                           REPORT AND RECOMMENDATION

TIMOTHY ALLEN CAIN,

     Defendants.


JANIE S. MAYERON, United States Magistrate Judge


The above matter came on before the undersigned upon defendant Timothy Allen Cain's Motion to Suppress Evidence Obtained as a Result of Violation of Defendant's Rights Under the Fourth Amendment to the United States Constitution [Docket No. 13].  Erika R. Mozangue, Assistant United States Attorney, appeared on behalf of the United States of America; Larry B. Leventhal, Esq. appeared on behalf of defendant Timothy Allen Cain, who was personally present.

The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

Based upon the pleadings, the pre-hearing submissions, exhibits submitted at hearing on April 28, 2008, and testimony taken from Agent Timothy Brumm, it is recommended that defendant Timothy Allen Cain's Motion to Suppress Evidence Obtained as a Result of Violation of Defendant's Rights Under the Fourth Amendment to the United States Constitution [Docket No. 13] be GRANTED in part and DENIED in part.

I.      **FACTUAL BACKGROUND**

On July 20, 2000, defendant was convicted of criminal sexual conduct in the first degree.  On June 5, 2006, he was released from the Moose Lake Correctional Facility and placed on intensive supervised release.   Prior to his release, defendant was informed of the conditions of his release by a case worker or a staff member of the institution, and he signed a document entitled "Conditions of Release" (hereafter referred to as "Release Agreement").  Gov't Ex. 1.  The Release Agreement included a set of special conditions and a set of standard conditions.   Defendant signed the Agreement, which stated that he fully understood all of the rules, regulations and conditions in the Release Agreement and that he had received a copy of the document. Id.

Prior to his release, defendant was assigned to Intensive Supervised Release Agent Tim Brumm of Ramsey County Community Corrections.   When Agent Brumm picked up defendant upon his release from the Moose Lake facility, both Agent Brumm and defendant possessed a copy of the Release Agreement, and Agent Brumm read through and explained every condition of the Agreement to defendant while they drove to their destination.  Defendant did not express any confusion over the conditions.

The Special and Standard Conditions of the Release Agreement that bear on defendant's motion to suppress included the following:

> Special Condition 15: Must not purchase, or possess or allow in his/her residence sexually explicit materials, nor enter an establishment that has sexual entertainment as its primary business as determined by the agent/designee.

> Special Condition 16:  Must not own or operate a computer that has any form of modem that allows for Internet capabilities, or access the Internet

through any technology or third party, or call "900" numbers or other sex lines without documented approval of the agent/designee.

Standard Condition 13: The offender will submit at any time to an unannounced visit and/or search of the offender's person, vehicle or premises by the agent/designee.

Id.

Following defendant's release, Agent Brumm conducted two unannounced visits per week at defendant's residence in St. Paul; by February of 2007, Agent Brumm was conducting residence visits once a week or once every other week.   On February 7, 2007, Agent Brumm and Agent Dawn Bloch conducted a residence visit of defendant's apartment.   Upon arrival at the residence, defendant answered the door and Agent Brumm began asking routine questions.   Agent Brumm looked into the apartment over defendant's shoulder and could see a laptop computer in defendant's bedroom that was open and operating.   Agent Brumm was aware that defendant was not allowed to own, possess or operate any computer.   Agent Brumm entered defendant's bedroom and instructed defendant not to touch the computer.   Defendant responded by asking "should I get my jacket?"   Agent Brumm contacted his partner, Agent Bloch, who was downstairs at the front of the building, and requested that she come up to defendant's apartment to assist.   Upon arrival at the apartment, Agent Brumm instructed Agent Bloch to call the St. Paul police to arrest defendant.

While they were waiting for the police to arrive, Agent Brumm walked over to the computer and touched the mouse, at which time a video image came up on the right-hand corner of the computer screen.   Agent Brumm noticed that it was a picture of a naked adult female, and believed there was also a picture of a naked minor child. Agent Brumm asked defendant why he had a computer in his home, and defendant stated that

it was his son's computer, and that he was setting it up for him and loading information on to it.  After a brief discussion, defendant then stated the computer was his, and said he had purchased it at Best Buy in West St. Paul a couple of weeks before. Additionally, prior to the arrival of the St. Paul police and defendant's arrest, Agent Brumm told defendant that he was going to search defendant's residence, and he asked defendant if there was anything else that he would find that would place defendant in additional violation of his release.   In response, defendant handed Agent Brumm a video called Totally Nude Video Aerobics.  At that point, the St. Paul police arrived and arrested defendant.

After defendant was taken into custody, Agent Brumm and Agent Bloch searched the residence.  During the search they discovered knives and swords that defendant was not permitted to possess, and also several CDs or disks, some of which were opened.  The agents seized the laptop, the disks and the knives and brought them to their office and put them in their evidence locker.

The following morning, February 8, 2007, Agent Brumm called Officer Kathy Pavlok, who worked for the St. Paul Police Department in the Sex Crimes Division. Officer Pavlok's job was to investigate sex crimes.   Agent Brumm informed Officer Pavlok that they had seized a computer, and Officer Pavlok stated that she would call Agent Brumm back when she returned to the office.  Agent Brumm testified that he and Agent Bloch then opened and powered on the computer to determine for the violations hearing if there was any additional information on the computer that put defendant in further violation of his supervised release.  They clicked into one of the folders, which contained several pictures of minors, some of which depicted minors performing sexual

acts, and some nude pictures of minors.  They then shut down the computer.  Agent Brumm also reviewed the confiscated CDs and discovered pornography on them. Agent Brumm spoke with Kathy Pavlok again and informed her of the images he had observed.  Officer Pavlok instructed Agent Brumm to contact Sergeant Bill Haider. Agent Brumm contacted Sergeant Haider and shared with him the documents observed on the computer and disks..  Agent Brumm brought the computer and other evidence to Sergeant Haider and turned it over to him.  On February 14, 2007, Sergeant Haider obtained a search warrant for the computer and the CD/DVDs.  See Gov't Ex. 2.

On December 12, 2007, defendant was interviewed by Special Agent Lese of the FBI.  Defendant was administered the Miranda warnings and waived his rights before speaking with Agent Lese.[1]  On February 5, 2008, defendant was indicted on one count of possession of child pornography in violation of 28 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2).

## II.    DISCUSSION

Defendant moved to suppress the evidence seized from his computer during the search of his residence on February 7, 2007, claiming that the search was conducted in violation of his Fourth Amendment rights prohibiting warrantless searches.  Def. Mot. to Suppress, p.1 [Docket No. 13].  Defendant maintained that once the computer was observed in defendant's bedroom, the violation of conditional release was clear, and the

---

[1]    Defendant's statement to Agent Lese in December of 2007 was only generally referenced by Agent Brumm and counsel at the motions hearing.  The information the Court has stated in the body of this decision regarding the December 2007 statement was obtained from the Government's post-hearing brief.  See Gov't Post-Hearing Mem. in Opp., p. 4 [Docket No. 20].  Defendant does not contest these facts in his responsive brief; he only contests the admission of Agent Lese's interview with defendant on grounds that it was derived as fruits of the poisonous tree.  See Def. Post-Hearing Reply Mem, pp. 14-16 [Docket No. 21].

immediate search of the computer performed by Agent Brumm – i.e. the touching of the mouse and subsequent viewing of the video image that popped up – and the further search of the computer by Agent Brumm and Agent Bloch on February 8, 2007, along with the viewing of the disks, required a warrant, and therefore, the searches were invalid.  Def. Mem., p. 4.  [Docket No. 14].  Furthermore, defendant asserted that the subsequent search warrant that was obtained by Sergeant Haider to examine the computer was based on the information obtained by Agent Brumm during the allegedly invalid searches conducted prior to the application for the warrant, and as a consequence, the results of the search authorized by the warrant must be suppressed as fruits of the poisonous tree.  Id., p. 5.

Defendant additionally moved to suppress any statements he made at his home and at the December 2007 interview on the basis that they were also fruits of the poisonous tree.  Def. Post-Hearing Reply Mem, pp. 14-16 [Docket No. 21].

In response, the Government contended that the searches of defendant's computer were valid based on defendant's supervised release agreement, and the subsequent search warrant.  Additionally, the Government argued that the statements made by defendant at his apartment were not compelled and were voluntary, and the statement given to Agent Lese in December 2007 was lawful either because the "fruit of the poisonous tree" doctrine did not apply to its admissibility, or because the statement was too attenuated from the taint of any alleged unlawful search of defendant's computer.  Gov't Post-Hearing Mem., pp. 9-12.

A.      **Warrantless Searches of Defendant's Computer and Computer Disks**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and it requires probable cause for lawful searches and seizures.  U.S. Const. amend. IV; see also Illinois v. Gates, 462 U.S. 213, 230, 235 (1983).   A warrantless search violates the Fourth Amendment unless an exception to the warrant requirement applies. Katz v. United States, 389 U.S. 347, 357 (1967).

"A probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable.'"   Griffin v. Wisconsin, 483 U.S. 868, 873 (1987).   At the same time, however, the Supreme Court recognized in Griffin that "[a]lthough we usually require that a search be undertaken only pursuant to a warrant (and thus supported by probable cause, as the Constitution says warrants must be), we have permitted exceptions when "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." Id. (quoting New Jersey v. T.L.O., 469 U.S. 325, 351 (1985)).   Consequently, the Court upheld a search of a probationer's home pursuant to a Wisconsin regulation that permitted a search by a probation officer without a warrant "as long as his supervisor approves and as long as there are 'reasonable grounds' to believe the presence of contraband." Id. at 870-71.   In reaching this conclusion, the Court stated "[a] State's operation of a probation system…presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements. Id. at 873-874.

> To a greater or lesser degree, it is always true of probationers (as we have said it to be true of parolees) that they do not enjoy 'the absolute liberty to

which every citizen is entitled, but only ... conditional liberty properly dependent on observance of special [probation] restrictions.' (quoting Morrissey v. Brewer, 408 U.S. 471, 480 (1972)).

These restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and the community is not harmed by the probationer's being at large. These same goals require and justify the exercise of supervision to assure that the restrictions are in fact observed. . . . Supervision, then, is a "special need" of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large.

Griffin, 483 U.S. at 874. (internal citation omitted).

Having concluded that a special needs search by a probation officer to determine whether the probationer was complying with probation condition was constitutional, the Supreme Court explicitly saved for another day the determination of whether warrantless searches of probationers were otherwise reasonable within the meaning of the Fourth Amendment.

In United States v. Knights, the Supreme Court expanded its holding in Griffin, finding that a warrantless search, supported by reasonable suspicion and authorized by a condition of probation, was reasonable within the meaning of the Fourth Amendment. 534 U.S. 112, 122, 122 S.Ct. 587 (2001). In Knights, the defendant was on probation subject to a condition in his probation order that he submit to a warrantless search at any time with or without a search warrant or reasonable cause by any probation officer or law enforcement officer. 534 U.S. at 114. Defendant's apartment was subsequently searched and he was indicted based on items recovered. The District Court suppressed the search on the basis that the search was for "investigatory" rather than "probationary" purposes, and the Ninth Circuit affirmed. Id. at 116. The Supreme Court granted certiorari to assess the constitutionality of warrantless searches made pursuant

to a common probation condition.  Id.  In reversing the appellate court, the Supreme Court held that the reason for the search was inconsequential – because the analysis considers the totality of the circumstances, there was no basis for examining the official purpose of the search.  Id. at 122.  The Court found that the search "was reasonable under our general Fourth Amendment approach of 'examining the totality of the circumstances,' with the probation search condition being a salient circumstance."  Id. at 118 (quoting Ohio v. Robinette, 519 U.S. 33, 39 (1996)).  The Court determined that "[t]he touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'"  Id. at 118-119 (quoting Wyoming v. Houghton, 526 U.S. 295, 300 (1999)).  In reaching this determination, the Court stated:

> We hold that the balance of these considerations requires no more than reasonable suspicion to conduct a search of this probationer's house. The degree of individualized suspicion required of a search is a determination of when there is a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable. See United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) (individualized suspicion deals "with probabilities"). Although the Fourth Amendment ordinarily requires the degree of probability embodied in the term "probable cause," a lesser degree satisfies the Constitution when the balance of governmental and private interests makes such a standard reasonable. See, e.g., Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). Those interests warrant a lesser than probable-cause standard here. When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable.

The same circumstances that lead us to conclude that reasonable suspicion is constitutionally sufficient also render a warrant requirement unnecessary. See Illinois v. McArthur, 531 U.S. 326, 330, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001) (noting that general or individual circumstances, including "diminished expectations of privacy," may justify an exception to the warrant requirement).

Id. at 121.

Because the search at issue in Knights was predicated on both the probation search condition and reasonable suspicion, the Court declined to address the constitutionality of a suspicionless search – i.e. one that was solely predicated upon the condition of probation.  Id. at 120 n. 6.  In Samson v. California, however, the Supreme Court expressly directed its attention to that question, "albeit in the context of a parolee search."  547 U.S. 843, 850 (2006).  Specifically, the Court stated:

We granted certiorari, to answer a variation of the question this Court left open in United States v. Knights, 534 U.S. 112, 120, n. 6, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) – whether a condition of release can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment.

Id. at 847.

In Samson, the Court was presented with a California statute that required parolees to submit to "searches or seizures by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause." Id. at 846.  Samson was on parole and was observed walking down the street by a police officer who knew Samson was on parole and believed that he had an outstanding warrant.  Id.  The officer stopped Samson, and radioed dispatch to confirm whether he in fact did have an outstanding warrant.  Id.  After learning that there was no warrant,

the officer nonetheless searched Samson's person and found methamphetamine in his pocket. Id. at 847.

After discussing Knights, and its judgment that both probation and parolee searches are necessary to address legitimate governmental interests of integrating probationers back into the community and combating recidivism, the Supreme Court concluded that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." Id. at 849, 853-54, 857.  The Court based its decision in part on the fact that parolees have even fewer expectations of privacy than probationers, because "parole is more akin to imprisonment than probation is to imprisonment."  Id. at 850.  In addition, the Court found that in "[e]xamining the totality of the circumstances pertaining to petitioner's status as a parolee, 'an established variation on imprisonment,' including the plain terms of the parole search condition, we conclude that petitioner did not have an expectation of privacy that society would recognize as legitimate."  Id. at 852. (internal citations omitted).

The Supreme Court's evolution from Griffin's special needs analysis to Samson's suspicionless search reasoning leads this Court to conclude that Griffin and its progeny permit warrantless searches of probationers' and parolees' residences and persons, with or without reasonable suspicion, where such searches are imposed or agreed upon by the probationer or parolee as a condition of their release.[2]  Applying these principles

---

[2]     The Court notes that even before Samson was decided, the Eleventh Circuit permitted a warrantless search of a probationer's computer based on reasonable suspicion even where the probationer had not agreed to such a search.  See United States v. Yuknavich, 419 F.3d 1302 (11th Cir. 2005).  In that case, Yuknavich was on probation for a crime involving child pornography; according to the terms of his probation, he could not access the internet unless it was for work purposes during work hours.  Id. at 1304.  Additionally, he was not permitted to purchase or possess any

to the case at hand, this Court finds that the warrantless searches of defendant's computer at his home and at the police station, along with the warrantless search of the

---

pornographic material. <u>Id</u>. at 1305.  Unlike <u>Griffin</u>, <u>Knights</u> or <u>Samson</u>, the terms of Yuknavich's probation did not require him to submit to searches of his home or person. <u>Id</u>.  During a home visit by his probation officers, Yuknavich took ten minutes to answer the door and was acting nervously.  <u>Id</u>. at 1306.  The probation officers entered the residence and observed several computers and other computer equipment, including a computer with an external modem connected to a phone line.  <u>Id</u>.  One of the officers asked Yuknavich to sit down at the computer and to click on "start" and then "documents."  <u>Id</u>. at 1307.  When Yuknavich moved the mouse, it was evident the computer was downloading files from the internet.  <u>Id</u>.  The documents file contained several JPEG files; the officer asked Yuknavich to open one and it contained a picture of a nude boy.  <u>Id</u>.  Yuknavich admitted that he had been downloading child pornography and asked for a second chance.  <u>Id</u>.  The officers told him to stop talking and to step away from the computer.  <u>Id</u>.  He was then placed under arrest.  <u>Id</u>.  One of the officers requested a search warrant be prepared for the computers.  <u>Id</u>.  In the meantime, Yuknavich gave consent for the officers to seize the computers.  <u>Id</u>.  The subsequent search of the computers revealed 535 images of child pornography.  <u>Id</u>.

In upholding the initial search of the computer at the residence, the Eleventh Circuit applied the <u>Knights</u> balancing test and specifically considered whether the lack of a condition in Yuknavich's probation agreement requiring him to submit to warrantless searches upset the <u>Knights</u> test so as to require more than reasonable suspicion to justify the search of the computer.  <u>Id</u>. at 1309-1310.  The court found that the missing search condition did not sway the test such that the probation officers needed more than reasonable suspicion to conduct a search of Yuknavich's computer.  <u>Id</u>. at 1311. The court further concluded that reasonable suspicion existed to search the computer, in light of the nature of Yuknavich's conviction, the restriction on his internet usage, that Yuknavich had previously admitted to accessing the internet unsupervised on two prior occasions, and that it took him ten minutes to answer the door.  <u>Id</u>.

In the present case, Agent Brumm was aware of the nature of defendant's conviction, that defendant was not permitted to have a computer or access the internet, and of defendant's statement "should I get my jacket?"  As such, in addition to the release condition that permitted search of his premises, like the officers in <u>Yuknavich</u>, Agent Brumm had reasonable suspicion to believe that defendant was violating his conditions of release, and was justified in searching the computer.

computer disks at the police station, were reasonable because they were based both on reasonable suspicion and the explicit conditions of defendant's release.[3]

Here, as special and standard conditions of his release, defendant had agreed to own or operate no computers, to possess no sexually explicit materials, and to submit to an unannounced searches of his person and premises by his supervising agent. Pursuant to these conditions, the Agent Brumm, defendant's supervising agent, went to defendant's home for a routine home visit. As soon as Agent Brumm saw the computer,

---

[3]    This Court has assumed that defendant had completed his sentence, as opposed to being on parole. Nevertheless, while this Court recognizes that parole, probation and supervised release serve different functions, for the purpose of this decision, it believes that the distinctions are not relevant to this Court's analysis. See United States v. Hill, 967 F.2d 902, 909 (3rd Cir.1992) ("'[T]here is no constitutional difference between probation and parole for Fourth Amendment purposes.'") (quoting United States v. Harper, 928 F.2d 894, 896 n. 1 (9th Cir. 1991)). The Supreme Court has addressed the nuances of parole and probation in the context of a continuum of imprisonment: "[o]n this continuum, parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment. As this Court has pointed out, 'parole is an established variation on imprisonment of convicted criminals....The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abides by certain rules during the balance of the sentence.'" Samson, 547 U.S. at 850 (quoting Morrissey v. Brewer, 408 U.S. 471, 477 (1972)). The Court further noted that "[f]ederal supervised release, ... in contrast to probation, is meted out in addition to, not in lieu of, incarceration." Id. (quoting United States v. Reyes, 283 F.3d 446, 461 (2d Cir. 2002)). In Reyes, the Second Circuit found that the principles underlying Griffin, where supervision was recognized as "a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large," "apply a fortiori to federal supervised release." 283 F.3d at 461 (quoting Griffin, 483 U.S. at 875).

"The grounds cited by the Supreme Court in its decision to apply a totality of the circumstances analysis in Samson – the state's broad concerns regarding "recidivism, public safety, and reintegration" – apply similarly to parolees and supervised releasees. Moreover, in general the circuits have not distinguished between parolees, probationers, and supervised releasees for Fourth Amendment purposes." United States v. Weikert, 504 F.3d 1, 10-11 (1st Cir. 2007) (citations omitted). As such, the Court concludes that for the purpose of the Fourth Amendment analysis in this case, the differences among parole, probation and supervised release are of no consequence to the analysis.

he had reasonable suspicion to search the residence because he knew that defendant was not permitted to have a computer as a condition of his release, and that its very presence was a violation of the release.  Additionally, defendant's statement "should I get my jacket?" added further support to Agent Brumm's reasonable suspicion to permit a warrantless search of defendant's residence.  Accordingly, Agent Brumm was entitled to seize the computer and associated computer disks to determine if they contained sexually explicit materials on them.

For the same reasons, the Court concludes that the warrantless search of the computer[4] at defendant's apartment and the examination of the computer and disks at the police station the next day, were permissible because they were within the parameters of defendant's Release Agreement requiring defendant to submit to searches of his residence, and were supported by reasonable suspicion.

In United States v. Tucker, the Tenth Circuit upheld the search of a parolee's computer.  305 F.3d 1193 (10th Cir. 2002).  Tucker was on parole for a conviction for possession of child pornography.  As part of his parole agreement, he agreed to submit to a search of his person, residence, vehicle or any other property under his control without a warrant and at any time upon reasonable suspicion to ensure compliance with the conditions of his parole.  Id. at 1195-1196.  Tucker also agreed not to view or possess any child pornography, to have no contact with children without supervision of

---

[4]     Defendant classifies the touching of his computer as an illegal search.  The Court questions whether the mere touching of the mouse even constituted a search.  Agent Brumm did not actively open any files, or even click the mouse in an effort to open any files; he testified that he merely touched the mouse at which point the video clip appeared.  Presumably the same video clip would have appeared when Agent Brumm took possession of the computer as evidence, as the process of seizing the computer would have required touching the mouse to shut down the computer and to pack it up.

an adult who was aware of his sexual deviancy, and to obey all state, local and federal laws. Id. at 1196. Based on a tip that Tucker was viewing child pornography, and had contact with a child, Tucker's parole officer visited Tucker's residence to conduct a parole search. Id. at 1196. Through the screen door, the parole officer could see Tucker near a computer; upon entry, he ordered Tucker away from the computer. Id. A police officer with expertise in computer crimes approached the computer, noticed it was connected to the internet, and that Tucker had been visiting a newsgroup. Id. The officer then ran software on the computer and observed that Tucker had visited other newsgroups whose names suggested they contained child pornography. Id. at 1197. A search warrant for the computer was subsequently prepared and child pornography was discovered on the computer. Id.

After acknowledging that the Fourth Amendment prohibits a search of a residence unless it is pursuant to a search warrant supported by probable cause, the Tenth Circuit found that parole searches pursuant to a valid parole agreement are different. Id. at 1199. Relying on Knights, the court stated that a parole agreement containing a provision allowing the search of a parolee's residence diminishes the parolee's reasonable expectation of privacy in his residence, and that a state has a heightened interest in monitoring the behavior of a parolee because a parolee is more likely to violate the law than an ordinary citizen. Id. (citing Knights, 534 U.S. at 591-92). "'[T]hese considerations require no more than reasonable suspicion to conduct a search' of a parolee's home when the parolee is subject to a search condition in his parole agreement. For the same reasons, a warrant is not required in a parole search." Id. (citing Knights, 534 U.S. at 592-93). Based on these considerations, the Tenth

Circuit upheld the parole search, including the computer, concluding that it was supported by reasonable suspicion. Id. at 1201. The court specifically noted that the terms of Tucker's parole agreement, which stated parole officers could search any property under his control, by its own terms authorized a search of the computer and expressly allowed parole officer to search for evidence that Tucker violated his parole conditions by possessing child pornography. Id. at 1202.

Tucker is instructive to the case at hand. Despite the fact that defendant's Release Agreement did not contain language permitting his computer to be searched, it did permit search of his premises. The clear purpose of the agreement was to permit supervising officers to search his premises for evidence that defendant had violated his release by operating a computer with internet capabilities and by possessing sexually explicit materials.

Stated differently, the discovery of one release violation (i.e. the ownership of a computer) did not mean that Agent Brumm was prohibited from searching for further violations. Defendant consented to warrantless searches of his residence as a part of his release. The Court concludes that searching the premises necessarily included searching the contraband found within the premises. It defies logic to suggest that a supervising officer could conduct a warrantless search of a releasee's residence based on the Release Agreement, with or without reasonable suspicion, but the same officer could not search the very item located within the residence – a computer – the releasee is not allowed to possess. Therefore, the Court finds that the touching of defendant's computer by Agent Brumm was a permissible search within the terms of the Release Agreement and was additionally supported by reasonable suspicion. See United States

v. Bigler, 2007 WL 171907 at *2 (S.D.Ohio Jan. 18, 2007) (computers and floppy disks validly analyzed without warrant after being seized during warrantless parole search of parolee's residence).  Further, since defendant was subject to warrantless searches of his apartment as a condition of his release, and Agent Brumm had reasonable suspicion that defendant was engaged in criminal conduct, no warrant was required before touching the computer.  See Knights, 534 U.S. at 121 ("The same circumstances that lead us to conclude that reasonable suspicion is constitutionally sufficient also render a warrant requirement unnecessary.") (citation omitted).

The subsequent and more intrusive search of the computer and the disks recovered from defendant's apartment by Agent Brumm the next day is similarly valid. The Court begins by observing that nothing in defendant's Release Agreement, or in the case law, imposes any kind of timeline regarding a search of a releasee's lawfully seized property.  That is, this Court found no authority suggesting that a probation, parole or supervised release officer could lawfully seize a computer, but could not lawfully  postpone the of examination of the computer.

To the contrary, the weight of authority suggests otherwise.  In United States v. Johns, the Supreme Court confronted a similar issue with analysis that is useful here. 469 U.S. 478 (1985).  In Johns, the Court revisited its holding in United States v. Ross, 456 U.S. 798 (1982), which established an exception to the warrant requirement where if police officers have probable cause to search a lawfully stopped vehicle, they may conduct a warrantless search of any containers found inside that may conceal the object of the search.  The issue in Johns was whether Ross authorized a warrantless search of packages three days after they were removed from vehicles that police

officers had probable cause to believe contained contraband.  469 U.S. at 480.  In its holding, the Court specifically noted that there was no allegation that the delayed search adversely affected Fourth Amendment interests, and that "[i]nasmuch as the Government was entitled to seize the packages and could have searched them immediately without a warrant, we conclude that the warrantless search three days after [the seizure] was reasonable."  Id. at 487.

The analysis of Johns was then applied in a case analogous to the one at hand. In United States v. Hough, a computer was seized from the home of a parolee who was subjected to the condition that any property under his control could be searched at any time.  2006 WL 2255212 at *1 (N.D.Cal. Aug. 7, 2006).  The computer was not searched until one month after its seizure.  Relying on Johns, the court upheld the delayed search, finding that at the time the computer was lawfully seized, a warrantless search of the computer would have been permissible, and the delay was not unreasonable because it did not adversely affect any privacy or possessory interest the parolee had in the computer, and given the complicated nature of computer data and hardware.  Id. at *2.

Other courts have upheld delayed searches of computers and diskettes seized from the residence of a probationer or parolee.  In United States v. Fiscus, defendant Fiscus was subject to warrantless searches of his person, residence, vehicle or any other property within his control.  64 Fed.Appx. 157 (10th Cir. 2003).  During a parole check at Fiscus's home, the parole officer began to search his computer and seized it, along with a box of diskettes, to be further searched.  Id. at 159.  The officers reviewed the computer and diskettes one day later and discovered child pornography on the

diskettes.   Fiscus argued that the officers lacked justification to seize the diskettes because any incriminating character was not immediately apparent.   The Tenth Circuit rejected this argument and held that the diskettes were in plain view, and the officers had probable cause to believe they contained child pornography because Fiscus disclosed that he had embarrassing photographs on the computer, the diskettes were labeled "Bob's Pics," and they had information that Fiscus stored child pornography on his computer.   Id. at 163.   The court also rejected Fiscus's argument that the officers were required to obtain a warrant prior to searching the diskettes and computer because the scope of the search was not expanded beyond its original justification, which was their belief that the diskettes contained images of child pornography.   Id. at 164.

Here, Agent Brumm had the right to search the contents of defendant's computer based on the terms of the Release Agreement and his reasonable suspicion that defendant had engaged in criminal conduct.   Whether that search occurred on the day the computer and disks were seized or a day later was of no consequence.   The examination could take place at either time.

Defendant's suggestion that the next-day search of the computer and disks was performed with the primary objective of gathering information for potential criminal prosecution is similarly of no consequence.   Def. Post-Hearing Reply Mem., p. 8.   The Supreme Court in Knights specifically rejected the argument that the purpose of the search should factor into the analysis: "Because our holding rests on ordinary Fourth Amendment analysis that considers all the circumstances of a search, there is no basis for examining official purpose… 'We have been unwilling to entertain Fourth

Amendment challenges based on the actual motivations of individual officers.'"   534 U.S. at 122 (quoting Whren v. United States, 517 U.S. 806, 813 (1996)).

Defendant's further argument that there was no need to search the computer and disks because he was in custody is also rejected.   Def. Post-Hearing Reply Mem., p. 4. Where a probationer, parolee or releasee is subject to a warrantless search clause, whether he is in custody or not has no bearing on the officer's justification for performing a warrantless search.   As the Seventh Circuit held in United States v. Jones, "[the defendant] has offered no justification, nor can we think of any, as to why a parolee's reasonable expectation of privacy in his home is heightened when he is in the State's custody for the purpose of determining whether the supervisory relationship has broken down and the parolee has violated the conditions of his parole. Given the rehabilitative purpose of [the] parole system, as well as the State's interest in deterring and preventing unlawful conduct by its parolees, we do not believe that the State's special supervisory need is diminished when a parolee is in its custody, or that the parolee enjoys a heightened expectation of privacy in his home due to his custodial status."   152 F.3d 680, 686 (7th Cir. 1998) (internal citations omitted).   See also United States v. Trujillo, 404 F.3d 1238, 1244 (10th Cir. 2005) (search of parolee's residence after his arrest did not violate the Fourth Amendment; "contraband does not cease to be dangerous when law enforcement officers take a parolee into custody"); United States v. Hill, 967 F.2d 902 (3d Cir. 1992) (warrantless search of parolee's business one day after his arrest did not violate the Fourth Amendment).

The Court finds that the next-day search of defendant's computer and disks did not require a warrant as it was based on defendant's Release Agreement and was supported by reasonable suspicion.

For all of these reasons, this Court recommends that defendant's motion to suppress the search of his computer and disks on February 7 and 8, 2008 be denied.

### B.    <u>Statements Made on February 7, 2007</u>

Defendant also contended that any statements he made after being arrested that associated himself with the possession of the pornographic images must be excluded because he was not <u>Mirandized</u> and because they were made right after the illegal touch search of the computer by Agent Brumm.  Def. Post-Hearing Reply Mem., p. 14. In opposition, the Government argued that the statements were not compelled and were voluntarily given.  Gov. Mem. in Opp., p. 8.

Agent Brumm testified that after he spotted the laptop, he entered defendant's bedroom and instructed defendant not to touch the computer.  Defendant responded by asking if he should get his jacket.  Then, while they were waiting for the police to arrive to arrest defendant, Agent Brumm walked over to the computer and touched the mouse. After observing the illicit material on the computer, Agent Brumm asked defendant why he had a computer in his home, and defendant stated that it was his son's, and that he was setting it up for him and loading information.  After brief discussion, defendant then admitted the computer was his, and said he had purchased it at Best Buy in West St. Paul a couple of weeks before.  In addition, in conjunction with Agent Brumm informing defendant that he was going to search defendant's residence, Agent Brumm asked defendant if there was anything else he would find that would place defendant in further

violation of his release.  Defendant informed Agent Brumm that he had a video called Totally Nude Video Aerobics.

Miranda v. Arizona requires that an individual be advised of her right to be free from compulsory self-incrimination and the right to the assistance of an attorney anytime the individual is taken into custody for questioning.  Miranda v. Arizona, 384 U.S. 436, 444 (1966); see also United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990). Therefore, the protections afforded by Miranda are triggered when an individual "is both in custody and being interrogated."  United States v. Hatten, 68 F.3d 257, 261 (8th Cir. 1995) (citing United States v. Lawrence, 952 F.2d 1034, 1036 (8th Cir.), cert. denied, 503 U.S. 1011 (1992)).  "Custody occurs either upon formal arrest or under any other circumstances where the suspect is deprived of his freedom of action in any significant way."  Miranda, 384 U.S. at 444.

With regard to defendant's first statement "should I get my jacket?", the Court finds that statement was not custodial.  At the time that statement was made, defendant was not in custody.  Agents Brumm and Bloch had just entered the apartment, and the statement was made prior to Agent Brumm telling his partner to call the St. Paul police to arrest defendant.  Furthermore, it is undisputed that the statement was not in response to any questioning.  Miranda does not protect an accused "from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers."  United States v. Cotton, 223 F.Supp.2d 1039, 1048 (D. Neb. 2002) (quoting Butzin v. Wood, 886 F.2d 1016, 1018 (8th Cir. 1989) (internal citations omitted)).  Consequently, the statement "should I get my jacket?" does not require suppression.

However, with regard to the statements made to Agent Brumm after Agent Bloch called the police and while they were waiting for the police to arrive to arrest defendant, there is no dispute that defendant was in custody at that point.  Defendant was aware that he and Agent Brumm were waiting for the St. Paul police to arrive to formally arrest him.  Furthermore, defendant's comment "should I get my jacket?" suggests that defendant was aware that he had violated the conditions of his release and presumably understood the potential consequences of the violation.  As such, whether defendant was entitled to <u>Miranda</u> warnings turns on whether he was being interrogated.

"Interrogation" means "questioning initiated by law enforcement officers." <u>Miranda</u>, 384 U.S. at 444.  The term "interrogation" is defined as "'express questioning or its functional equivalent.'  This includes 'any words or actions on the part of the police (*other than those normally attendant to arrest and custody*) that the police should know are reasonably likely to elicit an incriminating response . . .'" <u>United States v. Henderson</u>, 770 F.2d 724, 728 (8th Cir. 1985) (emphasis in original) (quoting <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300-301 (1980)); <u>United States v. Hatten</u>, 68 F.3d 257, 261 (8th Cir. 1995)).  Thus, the test for determining whether questioning is an "interrogation" within the meaning of <u>Miranda</u>, is whether, under all of the circumstances involved in a given case, questions are reasonably likely to elicit an incriminating response from the suspect. <u>See</u> <u>Innis</u>, 446 U.S. at 300-01.

The Court finds that Agent Brumm's questions after touching the computer and observing the sexually explicit material on it amounted to an interrogation.  Agent Brumm asked defendant why he had a computer in his home, and defendant initially said it was his son's, and then admitted to purchasing it himself.  Agent Brumm then

asked defendant whether they would uncover anything else during the search of his apartment that would constitute a violation of his release, at which point defendant informed Agent Brumm that he presented Agent Brumm with a video called Totally Nude Video Aerobics.   Because defendant's statements were in response to questioning by Agent Brumm while he was in custody, and the questions were likely to elicit an incriminating response from defendant, defendant was entitled to <u>Miranda</u> warnings.   As such, defendant's statements that were made after he was in custody should be suppressed.

The Government's argument that the statements are admissible based on <u>Minnesota v. Murphy</u>, 465 U.S. 420 (1984), is misplaced.   In <u>Murphy</u>, the Supreme Court found that statements made by a probationer to his probation officer during a probation interview were admissible in a subsequent proceeding.   <u>Id</u>. at 434.   However, the Court in <u>Murphy</u> also specifically restricted the holding to cases in which the subject is not in custody during interrogation: "We emphasize that Murphy was not under arrest and that he was free to leave at the end of the meeting. <u>A different question would be presented if he had been interviewed by his probation officer while being held in police custody or by the police themselves in a custodial setting</u>."   <u>Id</u>. at 430 n.5 (emphasis added).

In sum, defendant's first statement "should I get my jacket?" was non-custodial and not in response to questioning; as such, it should not be suppressed.   However, defendant was entitled to <u>Miranda</u> warnings prior to being questioned by Agent Brumm as they waited for the police to arrive to formally arrest defendant.   Consequently, any

statements defendant made in response to Agent Brumm's questioning at the

apartment while they waited for the police to arrive should be suppressed.[5]

C.  **Subsequent Search of Computer Pursuant to Warrant and Subsequent Statement**

Defendant argued that evidence derived from the subsequent search of his

computer by the St. Paul police and the statements he made on December 12, 2007,

---

[5]    As discussed in this decision, while there is a clear exception to Fourth Amendment warrant requirements for the search of the residences and persons of probationers, parolees and releasees, the Court could find no authority providing a similar exception from the requirements of Miranda where a parole, probation or supervised release officer is questioning a parolee, probationer or releasee who is in custody.  The Court acknowledges that in a probation context, Miranda warnings are generally not required for routine pre-sentence interviews.  See i.e. United States v. Jones, 266 F.3d 804, 812 (8th Cir. 2001) (questioning by federal probation officer concerning presentence investigation did not require Miranda warnings because information sought was routine identification information and resulted from the officer's normal fact-finding responsibility); United States v. Cortes, 922 F.2d 123, 126 (2d Cir. 1990) ("a probation officer need not give Miranda warnings before conducting a routine presentence interview"); United States v. Rogers, 921 F.2d 975, 979 (10th Cir.), cert. denied, 498 U.S. 839 (1990) ("[a] routine post-conviction presentence interview by a probation officer does not constitute the type of inherently coercive situation and interrogation by the government for which the Miranda rule was designed.").  But c.f. Willams v. Stewart, 441 F.3d 1030, 1050-51 (9th Cir. 2006 ) (the Fifth Amendment privilege applies during presentence interviews; where probation officer did not inform defendant of a right to remain silent before his presentence interview, interview was conducted in violation of the Fifth Amendment).  Nor are Miranda warnings generally required for non-custodial probation meetings.  See Minnesota v. Murphy, 465 U.S. 420, 429-34 (1984) (where probationer met with his probation officer at her office pursuant to her order and admitted, in response to her questioning, that he had committed a rape and murder some years ago, Miranda held inapplicable because probationer not in custody); United States v. Andaverde, 64 F.3d 1305, 1310-11 (9th Cir. 1995) (noting that probation officers need not issue Miranda warnings to probationers in non-custodial meetings); United States v. Holmes, 594 F.2d 1167, 1171 (8th Cir. 1979) (conversation between probation officer and probationer did not require Miranda warnings because probationer was not in custody).   However, during a custodial interrogation, the requirement of Miranda warnings remains despite the respective statuses of a probation officer and a probationer.   "Miranda protections should apply when a probation officer interrogates a suspect in custody before indictment or trial."  Howard v. Moore, 131 F.3d 399, 424 n.1 (4th Cir. 1997).   See also Andaverde, 64 F.3d at 1311 ("[C]ustodial statements made to probation officers are subject to the same voluntariness analysis as statements made to other law enforcement officers.").

should be excluded because the initial searches of the computer were illegally performed by Agent Brumm.   Specifically, defendant contended that the evidence recovered during the search pursuant to the warrant, and his later statement, should be suppressed because they constitute "fruits of the poisonous tree."   See Def. Post-Hearing Reply Mem., p. 14, citing Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407 (1963).

      1.   Search Warrant

On February 14, 2007, Sergeant Haider prepared an application for a search warrant for the computer.  Gov't Ex. 2.  The warrant was signed by Ramsey County District Court Judge Nathanson on February 14, 2007 and executed the following day. The warrant sought "data contained on hard drive(s) of Compaq Presario laptop computer, S/N CND6351P4X and CD/DVD's, which may include deleted files, email files or any other data that may indicate the storage or distribution of child pornography, or chat logs that may identify children being enticed online." Id.

The relevant portions of the affidavit accompanying the search warrant described the basis for the warrant as follows:

> On February 7, 2007 Brumm and Bloch conducted a residence visit at the apartment of Timothy Allen Cain, XXXX E. 7th Street, St. Paul, Minnesota. Cain is a convicted sex offender on Intensive Supervised Release for a Criminal Sexual Conduct 1st Degree offense, in which the victim was a 5-year old granddaughter.
>
> Brumm witnessed a laptop computer, open and powered on, in the bedroom of Cain.  Cain's parole conditions do not allow Cain to own, possess or operate any computer.  Cain admitted to owning the computer. On scene Agent Brumm witnessed video files of nude children on Cain's computer.  Can was taken into custody for parole violation at that point. Brumm seized the Presario laptop computer and 25 CD/DVDs.

On February 8, 2007, Agent Brumm and Bloch viewed several video files of prepubescent females performing oral sex on adult males contained on the seized CD/DVDs and laptop computer.

On February 8, 2007, Agent Brumm turned over to the Minnesota Internet Crimes Against Children Task Force (MICAC) office the laptop and CD/DVDs for a computer forensic exam.  Items were placed in the secure MICAC computer lab.

As discussed above, the Court concluded that the warrantless searches of the computer and disks performed by Agent Brumm were lawful, and form a valid basis for the search warrant.  However, the Court has also recommended suppression of the statements made by defendant in the apartment pursuant to Agent Brumm's questions.  As stated above, the affidavit in support of the search warrant contains the information that defendant admitted to owning the computer, which was an illegally obtained admission.  Nonetheless, even if the information that defendant admitted owning the computer was omitted from the warrant affidavit, probable cause still existed to issue the search warrant.

"Exclusion of derivative evidence is not justified where a warrant was secured by information from an independent source."  United States v. Robinson, 441 F.Supp.2d 1029, 1035 (D.Minn. 2006) (citing Segura v. United States, 468 U.S. 796, 814 (1984)).  "To uphold a warrant on independent information, the prosecution must satisfy two separate inquiries: (1) the decision to seek the warrant must not have been prompted by what was learned from the illegal conduct; and (2) illegally obtained information must not have affected the magistrate judge's decision to issue a warrant."  Id. at 1035-1036 (citing Murray v. United States, 487 U.S. 533, 542 (1988); United States v. Mithun, 933 F.2d 631, 635-36 (8th Cir.1991)).  Additionally, the prosecution must also show that the illegally obtained evidence did not affect its motivation to request a search warrant.  See

United States v. Leveringston, 397 F.3d 1112, 1115 (8th Cir. 2005).  "In assessing the officers' motivation, the essential question the Court must decide is whether the officers would have applied for the search warrants if they did not have the benefit of the illegally obtained information."  Robinson, 441 F.Supp.2d at 1036 (citation omitted).

      Here, it is clear that the decision to seek the warrant was not prompted by the information that defendant admitted to owning the computer.  Rather, Agent Brumm testified that he contacted the St. Paul police because of the presence of the computer at defendant's residence.  Defendant's admission that he owned the computer was irrelevant to the decision to seek the warrant because Agent Brumm validly observed the computer in defendant's possession, and validly observed the existence of child pornography on the computer.  Additionally, the information that defendant admitted to owning the computer would not have affected the reviewing judge's decision to issue the warrant.  Excising the improperly obtained statement from the warrant affidavit, the judge still had the information that defendant was a convicted sex offender on Intensive Supervised Release for a Criminal Sexual Conduct 1st Degree offense, in which the victim was a 5-year old granddaughter; that Agent Brumm witnessed a laptop computer, open and powered on, in defendant's bedroom; that defendant's parole conditions did not allow him to own, possess or operate any computer; and that Agent Brumm had viewed child pornography on the computer and on disks seized from the residence. The Court concludes that probable cause would have been found on these untainted facts and that issuance of a search warrant would have been justified.  Therefore, the Court recommends denial of defendant's motion to suppress the search warrant of his computer and disks.

2. December 12, 2007 Statements

On December 12, 2007, defendant was interviewed by Special Agent Lese of the FBI. There is no dispute that defendant was given his Miranda warnings and waived his rights before speaking with Agent Lese. Rather, defendant only argues that his statements were the illegal fruit of the warrantless searches. As discussed above, the Court has found that the warrantless searches performed by Agent Brumm were valid. Consequently, defendant's fruit of the poisonous tree argument is without merit, and his motion to suppress his December 12, 2007 statement should be denied.

## RECOMMENDATION

For the reasons set forth above, it is recommended that:

Timothy Allen Cain's Motion to Suppress Evidence Obtained as a Result of Violation of Defendant's Rights Under the Fourth Amendment to the United States Constitution [Docket No. 13] be GRANTED in part and DENIED in part.

Dated:        May 21, 2008

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before June 9, 2008, a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.